**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| BROOKFIELD GLOBAL RELOCATION SERVICES, LLC, | ) ) ) | CASE NO.: 4:15CV02029 |
| | ) | JUDGE JOHN R. ADAMS |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| CLIFFORD BURNLEY, *et al.*, | ) ) | **MEMORANDUM OF OPINION AND ORDER** |
| Defendants. | ) | |

### I. BACKGROUND

This action arises out of Plaintiff Brookfield Global Relocation Services, LLC's ("BGRS") involvement with Defendants Clifford Burnley's and Christine Burnley's (collectively, "the Burnleys") relocation from Ohio to Florida. (Am. Compl. ¶ 8, ECF No. 45.) In November 2014, Mr. Burnley's employer contracted with BGRS to assist in the sale of the Burnleys' home ("the Property"), located in Norwalk, Ohio, as part of the relocation efforts. (*Id.* at ¶¶ 7-9.) As a first step, in November 2014, BGRS obtained a title report for the Property, which reflected a mortgage, held by Wells Fargo, as the only recorded lien on the property. (*Id.* at ¶ 13.) Accordingly, BGRS presented the Burnleys with a Contract of Sale, under which BGRS agreed to purchase the Property from the Burnleys, satisfy the mortgage on the Property, and pay other closing-related costs. (*Id.* at ¶ 11.) The Burnleys executed the Contract of Sale on January 10 and 11, 2015. (*Id.* at ¶ 14.)

On March 9, 2015, BGRS executed the Contract of Sale, satisfied the mortgage on the Property, and paid other costs related to the Property. (*Id.* at ¶ 15.) BGRS ultimately attempted to sell the Property to a third-party in late March 2015. (*Id.* at ¶ 16.) On April 1, 2015, an updated title report for the Property reflected a lien on the Property which was recorded January 27, 2015

and held by Defendant CadleRock Joint Venture, L.P. ("CadleRock") as a result of litigation between Mr. Burnley and CadleRock. (*Id.* at ¶¶ 17-21.) The Burnleys failed to notify BGRS of the CadleRock lien or cure the defect to title of the Property, in violation of various provisions of the Contract of Sale. (*Id.* at ¶¶ 12, 22-28.)

Accordingly, this matter was first brought before this Court in September 2015, when BGRS filed a complaint against the Burnleys requesting relief for breach of contract, unjust enrichment, and fraud. (Compl. 5-8, ECF No. 1.)[1] In response, the Burnleys counterclaimed against BGRS requesting relief for negligence, "lost wages," "emotional distress," breach of contract, violations of the Fair Debt Collection Practices Act, and violations of the Ohio Consumer Sales Practices Act. (Burnleys' Countercls. 6-8, ECF No. 38.) Ultimately, both parties amended their filings: BGRS maintained its claims of breach of contract, unjust enrichment, and fraud against the Burnleys; the Burnleys maintained their claims of negligence, "lost wages," "emotional distress," breach of contract, and violations of the Ohio Consumer Sales Practices Act against BGRS and added claims of fraud, defamation, and violations of the Florida Consumer Collection Practices Act against BGRS. (Am. Compl. 4-8, ECF No. 45; Burnleys' Am. Countercls. 1-4, ECF No. 44.)

In response to the Burnleys' amended counterclaims, BGRS filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), which the Burnleys opposed. (BGRS's Mot. to Dismiss Burnleys' Am. Countercls., ECF No. 49; Burnleys' Opp'n to BGRS's Mot. to Dismiss, ECF No. 50. *See also* Reply in Supp. of BGRS's Mot. to Dismiss, ECF No. 55.) Shortly after the briefing surrounding the Burnleys' amended counterclaims was completed, but before this Court

---

[1] BGRS's complaint also contained a request for declaratory judgment against CadleRock. (Compl. 8-9, ECF No. 1.) In response, CadleRock counterclaimed, requesting declaratory judgment against BGRS. (CadleRock Countercl. 10-15, ECF No. 11.) Ultimately, BGRS and CadleRock filed a stipulated dismissal with this Court dismissing, with prejudice, all claims between BGRS and CadleRock. (Stipulated Dismissal, ECF No. 69; Order, ECF No. 86.) Therefore, because nothing remains at issue between these parties, these claims will not be discussed further.

ruled on BGRS's pending motion to dismiss, this Court was informed that the Burnleys had filed a bankruptcy petition in the Northern District of Georgia under Chapter 7 of the Bankruptcy Code, 11 U.S.C., Chapter 7. (Order 1, ECF No. 58.) Therefore, on June 29, 2016, pursuant to 11 U.S.C. § 362, the entirety of the matter before this Court was perpetually stayed and the case was closed, subject to reopening upon motion by any proper party in interest after the conclusion of the bankruptcy proceedings. (*Id.* at 1-2.)

On March 2, 2018, the Burnleys moved to reopen their claims of "defamation per se, emotional distress, etc." against BGRS, which this Court allowed. (Burnleys' Mot. to Reopen 1, ECF No. 59; Marginal Entry Order, ECF No. 66.)[2] Thereafter, on May 1, 2018, the Burnleys moved to amend their counterclaims against BGRS for a second time, stating they wished to "clarify the matters before the court" and seek relief against BGRS for claims of defamation per se, defamation per quod, intentional infliction of emotional distress, negligent infliction of emotional distress, and "Abuse/Misuse of a Legal Process." (Burnleys' Mot. to Am. Countercls. 1, ECF No. 68.) BGRS opposed the Burnleys' motion to amend, and, by marginal order, this Court denied the Burnleys' motion to amend, explaining that in ruling upon BGRS's motion to dismiss – the motion which was not ruled upon prior to the perpetual stay for the Burnleys' bankruptcy proceedings and which was effectively reinstated upon reopening some of the Burnleys' counterclaims against BGRS – this Court would address why allowing the Burnleys to amend their counterclaims for a second time would be futile. (BGRS's Opp'n to Burnleys' Mot. to Am., ECF No. 70; Marginal Entry Order, ECF No. 74. *See also* Reply in Supp. of Burnleys' Mot. to Am., ECF No. 72.)

---

[2]Although originally the Burnleys and CadleRock cross-claimed against one another seeking relief for various claims, neither party sought to revive these claims after the conclusion of the bankruptcy proceedings. (*See* CadleRock Cross-cl. 10-15, ECF No. 11; Burnleys' Cross-cl. 1-4, ECF No. 43.) Therefore, these claims are no longer before this Court and will not be discussed further.

Therefore, the following discussion addresses why allowing the Burnleys to further amend their counterclaims would be futile. Furthermore, for the reasons contained in this Memorandum of Opinion and Order, BGRS's Motion to Dismiss the Burnleys' Amended Counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6) is hereby GRANTED. (BGRS's Mot. to Dismiss Burnleys' Am. Countercls., ECF No. 49).

## II.  STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move for the dismissal of claims when the claimant has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This requirement imposes both "legal *and* factual demands." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013) (*emphasis* in original).

First, and foremost, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation does not demand "detailed factual allegations," but it does necessitate "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). Pleadings offering either "labels and conclusions or a formulaic recitation of the elements of a cause of action," or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," or even "naked assertion[s] devoid of further factual enhancement" will not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557) (internal quotation marks omitted). Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Which is

particularly necessary as courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). Consequently, a pleading party is required to provide a factual framework that falls somewhere between a recitation of the legal elements of a claim and "detailed factual allegations" – in other words, the pleading party is required to provide well-pleaded factual allegations.

When provided, this Court then considers the well-pleaded factual allegations, "assume[s] their veracity and then determine[s] whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. A claim is plausible when the factual content pled "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). Notably, plausibility and probability are not one in the same. Rather, plausibility "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The determination of whether a complaint states plausible claims for relief typically requires "the reviewing court to draw on its judicial experience and common sense" unless "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

When analyzing the currently pending motion to dismiss pursuant to the above enumerated standard, this Court is mindful that it is required to construe the pleading subject to dismissal in the light most favorable to the non-moving party and accept all factual allegations contained in the pleading as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. 555-56). In addition, where the pleading under scrutiny is from those acting in their pro se capacity, as it is in this instance, this Court is aware of the need to hold the pleading "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 520 (1972). Even so, "pro se plaintiffs are not automatically entitled to take every case to trial" and "the lenient treatment

generally accorded to pro se litigants has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (citing *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991)).

Individuals proceeding pro se are still required to meet basic pleading requirements. *See Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). Specifically, the pleading "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)) (internal quotation marks omitted) (*emphasis* in original). However, even this "less stringent standard for pro se plaintiffs does not compel the courts to conjure up unpleaded facts to support conclusory allegations." *Kamppi v. Ghee*, No. 99-3459, 2000 U.S. App. LEXIS 4160 at *4 (6th Cir. Mar. 14, 2000) (citing *Scheid*, 859 F.2d at 437).

### III. DISCUSSION

This Court properly has subject matter jurisdiction over the instant matter pursuant to 28 U.S.C. § 1332(a) as there is complete diversity of citizenship of the parties and the amount in controversy exceeds $75,000. (Am. Compl. ¶ 5, ECF No. 45.) When a dispute predicated upon diversity jurisdiction is before this Court, the substantive law of the forum state must be applied, while federal procedural law is followed. *See Himmel v. Ford Motor Co.*, 342 F.3d 593, 598 (6th Cir. 2003); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1988). Therefore, with respect to the Burnleys' substantive claims for relief, this Court must apply the law as pronounced by the Supreme Court of Ohio. *Croce v. New York Times Co.*, 930 F.3d 787, 792 (6th Cir. 2019) (citing *Bank of N. Y. v. Janowick*, 470 F.3d 264, 272 (6th Cir. 2006)). In the event that the Supreme Court of Ohio has not yet addressed the issues present in the instant matter, this Court "may consider the decisions of the State's courts of appeals, relevant dicta from the Ohio Supreme court, as well as other sources such

as 'restatements of law, law-review commentaries, and the rules adopted by other jurisdictions.'" *Id.* (quoting *Mazur v. Young*, 507 F.3d 1013, 1016-17 (6th Cir. 2007)).

As a threshold matter, in requesting this Court reopen their counterclaims against BGRS, the Burnleys failed to specify which claims they wished to reopen. (Burnleys' Mot. to Reopen 1, ECF No. 59.) The only indication is in the title of their motion: "Motion to Reopen Defendants [sic] Claim(s) of Defamation per se, Emotional distress, etc." without specifying what "etc." covers. (*Id.*) Prior to the stay of this matter, the Burnleys had asserted claims of negligence, fraud, defamation, breach of contract, "lost wages," "emotional distress," violations of the Ohio Consumer Sales Practices Act, and violations of the Florida Consumer Collection Practices Act. (Burnleys' Am. Countercls. 1-4, ECF No. 44.) As indicated in the title of their motion to reopen, and as clarified in their recent motion to amend, the Burnleys sought to reopen only the claims of "[d]efamation (per se or per quod) . . . and infliction of emotional distress (intentional or negligent) . . ." against BGRS. (Burnleys' Mot. to Am. Countercls. 1, ECF No. 68.) Therefore, the Burnleys' claims of negligence, fraud, breach of contract, "lost wages," violations of the Ohio Consumer Sales Practices Act, and violations of the Florida Consumer Collection Practices Act against BGRS were not reopened and are no longer before this Court. These claims will not be addressed further.

### A. Defamation Claim

"Defamation is a false publication that injures a person's reputation." *Gosden v. Louis*, 116 Ohio App.3d 195, 206, 687 N.E.2d 481 (9th Dist.1996) (citing *Dale v. Ohio Civ. Serv. Emps. Ass'n*, 57 Ohio St.3d 112, 117, 567 N.E.2d 253 (1991)). There are two types of defamation: defamation per se, which "occurs when material is defamatory on its face," and defamation per quod, which "occurs when material is defamatory through interpretation or innuendo." *Gosden*, 116 Ohio App.3d at 206-07 (citing *Becker v. Toulmin*, 165 Ohio St. 549, 556, 138 N.E.2d 391

(1956)). To prevail on a claim for either type of defamation, the Burnleys must prove: "(1) that a false statement of fact was made, (2) that the statement was defamatory, (3) that the statement was published, (4) that the [Burnleys] suffered injury as a proximate result of the publication, and (5) that [BGRS] acted with the requisite degree of fault in publishing the statement." *Am. Chem. Soc'y v. Leadscope, Inc.*, 133 Ohio St.3d 366, 2012-Ohio-4193, 978 N.E.2d 832, ¶ 77. (internal quotation marks and citation omitted).

"[I]t is for the court to decide as a matter of law whether certain statements alleged to be defamatory are actionable or not." *Id.* at ¶ 78 (quoting *Yeager v. Local Union 20, Teamsters*, 6 Ohio St.3d 369, 372, 453 N.E.2d 666 (1983)). "In determining whether a statement is defamatory as a matter of law, a court must review . . . the totality of the circumstances." *Am. Chem. Soc'y*, 2012-Ohio-4139 at ¶ 79 (internal quotation marks and citation omitted). This is important because even if the Burnleys establish a prima facie case of defamation, BGRS cannot be held liable if the published statement was privileged.

The defense of qualified privilege exists when the alleged defamatory statement is "fairly made by a person in the discharge of some public or private duty, whether legal or moral, or in the conduct of his own affairs, in matters where his interest is concerned." *Hahn v. Kotten*, 43 Ohio St.2d 237, 244, 331 N.E.2d 713 (1975) (internal quotation marks and citation omitted). This privilege is recognized "where the publisher and the recipient have a common interest, and the communication is of a kind reasonably calculated to protect or further it" – a situation that "is most obvious in the case of those who have entered upon or are considering business dealings with one another." *Id.* Typically, a statement enjoys qualified privilege when it is made in good faith and in a manner limited in scope to uphold an interest held by the statement's publisher and when it is made on the proper occasion, in a proper manner, and only to the proper parties. *Id.* at 244, 246

(citations omitted). Qualified privilege "arises from the necessity of full and unrestricted communication concerning a matter in which the parties have an interest or duty, and is not restricted within any narrow limits." *Id.* at 246 (internal quotation marks and citation omitted). This privilege can only be overcome if it is proved, by clear and convincing evidence, that the statement was made with actual malice, where actual malice "is defined as acting with knowledge that the statements are false or acting with reckless disregard as to their truth or falsity." *Jacobs v. Frank*, 60 Ohio St.3d 111, 116, 573 N.E.2d 609 (1991).

In claiming they suffered defamation, the Burnleys allege BGRS made a false statement to Mr. Burnley's employer that the Burnleys committed fraud resulting in Mr. Burnley's termination. (Burnleys' Am. Countercls. 2, ECF No. 44.) In response to this claim, BGRS argues that any statement it is alleged to have made to Mr. Burnley's employer was privileged and, therefore, the Burnleys' claim is not actionable. (Mem. in Supp. of BGRS's Mot. to Dismiss Burnleys' Am. Countercls. 18-20, ECF No. 49-1.) This Court will first address whether the alleged statement that the Burnleys committed fraud communicated between BGRS and Mr. Burnley's employer was privileged, as this issue is dispositive.

Under Ohio law, qualified privilege is an affirmative defense. *Douglas Elec. Corp. v. Grace*, 70 Ohio App.3d 7, 12, 590 N.E.2d 363 (2d Dist.1990). *See also Cooper v. Grace Baptist Church, Inc.*, 81 Ohio App.3d 728, 734, 612 N.E.2d 357 (10th Dist. 1992). Accordingly, because a motion to dismiss brought pursuant to the Federal Rules of Civil Procedure may be premised on an affirmative defense if the Burnleys' "own allegations show that a defense exists that legally defeats the claim for relief," the issue of whether the allegedly defamatory statement is privileged is properly before this Court. *Marsh v. Genentech, Inc.*, 693 F.3d 546, 554-55 (6th Cir. 2012).

In the amended complaint, BGRS generally alleges that it provides relocation services, which includes assisting in real estate sales, to their corporate clients. (Am. Compl. ¶ 7, ECF No. 45.) The Burnleys do not dispute that Mr. Burnley's employer was one such client who contracted with BGRS to assist in the Burnleys' relocation. (Am. Compl. ¶ 8, ECF No. 45; Answer to Am. Compl. ¶ 8, ECF No. 46.) In fact, the Burnleys go so far as to admit that there is no dispute between the parties that BGRS and Mr. Burnley's employer "had a contractual relationship in which [BGRS] provided relocation services" for the employees of Mr. Burnley's employer and as a result "it is reasonable to expect" that BGRS and Mr. Burnley's employer communicated with respect to the sale of the Property and the Cadlerock lien. (Burnleys' Opp'n to BGRS's Mot. to Dismiss 1-2, ECF No. 50.) The Burnleys do not stop there – they also admit that BGRS "had a responsibility to report" the Cadlerock lien to Mr. Burnley's employer. (*Id.* at 2.)

This Court will not supplant the understanding and agreement of the parties. It is clear from the pleadings there was a contractual relationship between BGRS and Mr. Burnley's employer formed for the common interest of selling the Property in order to relocate the Burnleys. It is also clear that in between the time the Burnleys executed the Contract of Sale in early January 2015 and BGRS executed the Contract of Sale in early March 2015, the Cadlerock lien arose affecting title and any future sale of the Property. Given the Cadlerock lien disrupted the common interest contemplated by the contractual relationship between BGRS and Mr. Burnley's employer, BGRS's communications to Mr. Burnley's employer regarding the Cadlerock lien are "of a kind reasonably calculated to protect or further" said common interest. Furthermore, there are no facts alleged by either party indicating or even suggesting the communications between BGRS and Mr. Burnley's employer regarding the Cadlerock lien were made either in bad faith or in a manner unlimited in scope to uphold the common interest between BGRS and Mr. Burnley's employer. There is

nothing to suggest that any communication between BGRS and Mr. Burnley's employer was made on an improper occasion, in an improper manner, or to improper parties. Therefore, this Court finds that communications between BGRS and Mr. Burnley's employer regarding the Cadlerock lien and the Property were privileged – even if the communication, as alleged, was that the Burnleys committed fraud.

Accordingly, the Burnleys can only overcome this privilege by providing clear and convincing evidence that BGRS's alleged statement that the Burnleys committed fraud was made with actual malice. The Burnleys have not met this burden. The Burnleys have provided no evidence or argument that BGRS possessed actual knowledge that any statement that the Burnleys committed fraud was false. The Burnleys, therefore, attempt to argue that the alleged statement was made in reckless disregard as to its truth or falsity by claiming the statement was made "in an effort to conceal the fact that [BGRS] did not perform due diligence with regard to this transaction." (Burnleys' Opp'n to BGRS's Mot. to Dismiss 2, ECF No. 50.) However, this argument fails.

Reckless disregard, under the definition of actual malice, requires that BGRS "must have made the false publication with a high degree of awareness of . . . probable falsity, . . . or must have entertained serious doubts as to the truth of his publication." *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989) (internal quotation marks and citations omitted). The Burnleys have failed to allege any facts demonstrating, or even suggesting, BGRS possessed any doubts as to the truth of their alleged statement to Mr. Burnley's employer. In fact, BGRS brought a claim of fraud against the Burnleys in the instant matter before this Court, indicative of BGRS's belief that the Burnleys committed fraud, which undercuts any suggestion the alleged statement to Mr. Burnley's employer was made with reckless disregard as to its truth or falsity. Because the Burnleys cannot overcome the qualified privilege BGRS's statements to Mr. Burnley's employer

enjoyed, the Burnleys claim for defamation, per se or per quod, against BGRS is not legally actionable. The entirety of the Burnleys' defamation claim against BGRS is, therefore, dismissed.

As an additional note, the Burnleys made a sweeping allegation that Mrs. Burnley suffered emotional distress as a result of this litigation because BGRS "made false claims against her regarding her alleged obligation under the Wells Fargo Mortgage and by claiming she committed fraud." (Burnleys' Am. Countercls. 2, ECF No. 44.) To the extent this claim is one of defamation, although not well-pled, it fails as a matter of law regardless because any statements made during the course of litigation enjoy an absolute privilege. *See Hecht v. Levin*, 66 Ohio St.3d 458, 460, 613 N.E.2d 585 (1993) ("A statement made in a judicial proceeding enjoys an absolute privilege against a defamation action as long as the allegedly defamatory statement is reasonably related to the proceeding in which it appears").

Finally, the Burnleys request this Court allow them to amend their pleadings for a second time pursuant to Federal Rule of Civil Procedure 15(a)(2) "in the interest of justice." (Burnleys' Mot. to Am. Countercls. 1, ECF No. 68.) Although this Court "should freely give leave [to amend] when justice so requires," this Court may also deny a request for leave to amend where amendment would be futile. *See* Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962). Amendments are futile when they would not survive a motion to dismiss. *Midkiff v. Adams County Reg'l Water Dist.*, 409 F.3d 758, 767 (6th Cir. 2005) ("A motion for leave to amend may be denied for futility 'if the court concludes that the pleading as amended could not withstand a motion to dismiss.'") (quoting *Martin v. Associated Truck Lines, Inc.*, 801 F.2d 246, 249 (6th Cir. 1986)).

The entirety of the Burnleys' proposed amendments do no more than detail the Burnleys displeasure with BGRS, specify the alleged damages suffered by the Burnleys, and further claim the initiation of judicial proceedings demonstrate defamation per quod. (Burnleys' Mot. to Am.

Countercls. ¶¶ 1-17, 24-33, ECF No. 68.) First, any claim made by the Burnleys that initiating or continuing litigation is defamation per quod fails as a matter of law. *See Hecht v. Levin*, 66 Ohio St.3d 458, 460, 613 N.E.2d 585 (1993). Second, the Burnleys fail to even attempt to overcome the qualified privilege enjoyed by BGRS's statements to Mr. Burnley's employer. (Burnleys' Mot. to Am. Countercls. ¶¶ 1-17, 24-33, ECF No. 68.) The mere repetition of the word "malicious" and the phrase "without privilege" do not make them true or, at the least, not conclusory. (*Id.*) Allowing the Burnleys to further amend their defamation claims against BGRS would be futile, as they would still not be actionable as a matter of law.

For all the foregoing reasons – as the Burnleys have failed to state a legally cognizable claim for defamation against BGRS, and their proposed amended defamation claims still fail to state a legally cognizable claim for defamation against BGRS – the Burnleys' request to amend their defamation claim is denied and BGRS's request to dismiss the Burnleys' defamation claim is granted.

### B. Infliction of Emotional Distress Claims

Under Ohio law, to prove intentional infliction of emotional distress, the Burnleys must demonstrate that: (1) BGRS "intended to cause emotional distress, or knew or should have known that [its] conduct would result in serious emotional distress" to the Burnleys; (2) BGRS's "conduct was outrageous and extreme beyond all bounds of decency and subsequently can be characterized as utterly intolerable in a civilized community;" (3) BGRS's "conduct was the proximate cause of" the Burnleys' "psychic injuries;" and (4) the Burnleys' "emotional distress was serious, and of such a nature that no reasonable person could be expected to endure it." *Bolander v. BP Oil Co.*, 128 F. App'x 412, 419 (6th Cir. 2005) (interpreting Ohio law) (citations omitted). "To say that

Ohio courts narrowly define extreme and outrageous conduct would be something of an understatement." *Id.* (internal quotation marks and citation omitted).

For a claim of negligent infliction of emotional distress, the Burnleys must prove: (1) they "witnessed and/or experienced a real or impending danger to another;" (2) BGRS's "conduct negligently caused the dangerous incident;" and (3) BGRS's "conduct was the proximate cause of" the Burnleys' "serious and reasonably foreseeable emotional distress." *David v. Matter*, 2017-Ohio-7351, 96 N.E.3d 1012, ¶ 14 (6th Dist.) (citing *High v. Howard*, 63 Ohio St.3d 82, 86, 592 N.E.2d 818 (1992)). "This tort is generally asserted by a bystander because she witnessed another person in danger and the defendant was unaware of the presence of the bystander." *David*, 2017-Ohio-7351 at ¶ 14.

In their amended counterclaims against BGRS, the Burnleys allege they have suffered emotional distress due to this litigation and as a result of BGRS's allegedly defamatory statements made to Mr. Burnley's employer. (Burnleys' Am. Countercls. 2, ECF No. 44.) These statements appear to be allegations of specific damages rather than actual claims of intentional or negligent infliction of emotional distress. Even with construing the Burnleys' counterclaims in the light most favorable to them and accepting these statements as true, the Burnleys have not alleged any facts supporting a single element of either intentional or negligent infliction of emotional distress. Because the Burnleys have failed to provide well-pleaded factual allegations that plausibly state claims for relief for intentional infliction of emotional distress or negligent infliction of emotional distress against BGRS, the Burnleys' claims for "emotional distress" fail as a matter of law.

Once again, the Burnleys request this Court allow them to amend their pleadings for a second time "in the interest of justice" pursuant to Federal Rule of Civil Procedure 15(a)(2). (Burnleys' Mot. to Am. Countercls. 1, ECF No. 68.) And once again, the Burnleys fail to plead facts that

support any element of intentional or negligent infliction of emotional distress. (*Id.* at ¶¶ 18-23, 34-38.) Again, the Burnleys' allegations read more as a request for specific damages rather than actual allegations supporting legal causes of action. (*Id.*) In fact, the Burnleys do not allege any facts indicating BGRS's conduct was "outrageous and extreme beyond all bounds of decency and subsequently can be characterized as utterly intolerable in a civilized community," or that the Burnleys' "emotional distress was serious, and of such a nature that no reasonable person could be expected to endure it," or that the Burnleys "witnessed and/or experienced a real or impending danger to another."

The Burnleys do claim that Mr. Burnley's loss of employment "caused severe emotional distress to not only Mr. Burnley and his wife, but their three children as well" which apparently manifested as "sleeplessness, lack of appetite, depression, anxiety, marital discord, humiliation, migraines, chronic cough and chest pains (due to stress), etc." (*Id.* at ¶¶ 19, 22. *See also id.* at ¶¶ 35, 38.) The law is clear, however, that "an employee's termination . . . does not rise to the level of 'extreme and outrageous conduct' without proof of something more." *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 376 (6th Cir. 1999). Furthermore, BGRS did not terminate Mr. Burnley's employment – his employer did. Intentional or negligent infliction of emotional distress claims against BGRS due to the termination of Mr. Burnley's employment are misplaced.

Therefore, allowing the Burnleys to further amend their claims for intentional infliction of emotional distress or negligent infliction of emotional distress would be futile, as they still would not be actionable as a matter of law. *See Midkiff v. Adams County Reg'l Water Dist.*, 409 F.3d 758, 767 (6th Cir. 2005) ("A motion for leave to amend may be denied for futility 'if the court concludes that the pleading as amended could not withstand a motion to dismiss.'") (quoting *Martin v. Associated Truck Lines, Inc.*, 801 F.2d 246, 249 (6th Cir. 1986)).

For all the foregoing reasons – as the Burnleys have failed to state a legally cognizable claim for either intentional or negligent infliction of emotional distress against BGRS, and their proposed amended claims still fail to state a legally cognizable claims for either intentional or negligent infliction of emotional distress against BGRS – the Burnleys' request to amend their "emotional distress" claims is denied and BGRS's request to dismiss the Burnleys' "emotional distress" claims is granted.

### C. Abuse of Process Claim

Finally, the Burnleys request that this Court allow them to amend their counterclaims against BGRS to assert a claim for abuse of process. (Burnleys' Mot. to Am. Countercls. 1, ECF No. 68.) In Ohio, in order to prove abuse of process, the Burnleys must demonstrate: "(1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process." *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.*, 68 Ohio St.3d 294, 298, 626 N.E.2d 115 (1994). An abuse of process claim fails, however, if BGRS "has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Id.* at 298 n.2.

The Burnleys allege that BGRS committed abuse of process in filing an adversary proceeding and an objection to discharge pursuant to 11 U.S.C. § 727 in the Northern District of Georgia Bankruptcy Court for the purpose of harassment. (Burnleys' Mot. to Am. Countercls. ¶¶ 39-50, ECF No. 68.) Besides alleging that BGRS's involvement in the Burnley's bankruptcy proceedings caused "financial, physical, and emotional harm" to the Burnleys and their children and resulted in the bankruptcy proceedings continuing for an extended period of time, the Burnleys fail to articulate the ulterior purpose for which BGRS perverted the bankruptcy proceedings in the

Northern District of Georgia Bankruptcy Court. (*Id.*) The Burnleys allegations cannot be classified as anything but conclusory. The Burnleys have failed to allege any facts that indicate BGRS initiated, or continued, proceedings against the Burnleys for any other purpose than to recover the funds it believe it was owed as a result of the Burnleys failure to remedy the Cadlerock lien on the Property. The mere belief that litigation is harassing does not make it so. This Court also finds it telling that the Northern District of Georgia Bankruptcy Court would not allow the Burnleys to file this claim for abuse of process against BGRS. (Burnleys' Mot. to Am. Countercls. ¶ 45, ECF No. 68.)

Even if this Court were to assume that BGRS did file the adversary proceeding and objection to discharge against the Burnleys for the purpose of harassment, the Burnleys claim of abuse of process would still fail. As discussed previously, the existence of the Cadlerock lien is not disputed. It is also undisputed that the Burnleys did not inform BGRS of the Cadlerock lien prior to BGRS gaining possession to title of the Property and did not satisfy the Cadlerock lien at BGRS's request. BGRS was entitled to attempt recover the funds it believed it was owed as a result of satisfying the Cadlerock lien to the benefit of the Burnleys. Carrying out that process to its authorized conclusion in the form of an adversary proceeding and objection to discharge during bankruptcy proceedings does not amount to abuse of process, even if BGRS maintained bad intentions while doing so.

As a brief note, the Burnleys repeatedly allege that BGRS failed to provide any evidence at trial in support of the adversary proceeding and objection to discharge, evidencing harassment by BGRS. (*Id.* at ¶¶ 39-50.) This is an incorrect characterization of the results during the bankruptcy proceedings, however. The Northern District of Georgia Bankruptcy Court held that BGRS established a claim against the Burnleys for breach of contract, however, with respect to the

objection to discharge under 11 U.S.C. § 727(a)(4), the court held that because certain evidence was not presented, BGRS failed to demonstrate by a preponderance of the evidence that Mr. Burnley's testimony was knowingly false as required. *Brookfield Global Relocation Servs., LLC v. Burnley* (*In re Burnley*), 574 B.R. 905, 914-922 (Bankr. D. Ga. 2017.) In fact, the court stated the following with respect to exceptions to discharge:

> Moreover, [the Burnleys'] behavior and litigiousness throughout this proceeding severely undermined their credibility. But as the Court has already indicated, the Court could not confidently conclude what [the Burnleys] knew and when they knew it. Thus, the Court concludes that [BGRS] failed to carry its burden of establishing that [the Burnleys] acted with the requisite fraudulent intent. As a result, [BGRS] is not entitled to judgment under § 523(a)(2)(A).

*Brookfield Global Relocation Servs., LLC v. Burnley* (*In re Burnley*), 574 B.R. 905, 921 (Bankr. D. Ga. 2017.) The court's statement does not support harassment as the Burnleys argue. Rather, it is indicative that a legal proceeding was carried out to an authorized conclusion. BGRS is not guilty of harassment simply because the Northern District of Georgia Bankruptcy Court's conclusions of law came down in favor of the Burnleys.

Therefore, allowing the Burnleys to amend their counterclaims for a second time to include an abuse of process claim against BGRS would be futile as this claim fails as a matter of law. Accordingly, the Burnleys' motion to amend their counterclaims to add a claim of abuse of process is denied because allowing the Burnleys to file this counterclaim would result in a failure to state any legally cognizable claim against BGRS – the abuse of process claim would not survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss. *See Midkiff v. Adams County Reg'l Water Dist.*, 409 F.3d 758, 767 (6th Cir. 2005) ("A motion for leave to amend may be denied for futility 'if the court concludes that the pleading as amended could not withstand a motion to dismiss.'") (quoting *Martin v. Associated Truck Lines, Inc.*, 801 F.2d 246, 249 (6th Cir. 1986)).

**IV.   CONCLUSION**

For all the foregoing reasons, BGRS's Motion to Dismiss the Burnleys' Amended Counterclaims is GRANTED. (BGRS's Mot. to Dismiss Burnleys' Am. Countercls., ECF No. 49.) The Burnleys' claims of defamation and "emotional distress" are dismissed. The Burnleys' Motion to Amend their Counterclaims for a second time is DENIED as any further amendment would be futile – the Burnleys fail to state legally cognizable claims for intentional infliction of emotional distress, negligent infliction of emotional distress, or abuse of process. (Burnleys' Mot. to Am. Countercls., ECF No. 68.) Given this disposition, no claims or issues remain between the parties. Therefore, this matter is hereby DISMISSED in its entirety, with prejudice.

IT IS SO ORDERED.

DATE: December 28, 2020               /s/ John R. Adams
                                       Judge John R. Adams
                                       UNITED STATES DISTRICT COURT